CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
03/30/2019
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **CARL D. GORDON,** | ) | Civil Action No. 7:17-cv-00503 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **BARTEE,** *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | Senior United States District Judge |

Carl Gordon, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] The matter before the court is the defendants' motion for summary judgment.[2] I will grant in part and deny in part the motion for the reasons that follow.

### I. Background

On November 10, 2015, Defendants Bartee and Carnes were instructed to escort Gordon to the intake area at Wallens Ridge State Prison so that he could be transported to Red Onion State Prison. Bartee Aff. ¶ 4, dkt. 27-1.[3] Bartee and Carnes arrived at Gordon's cell and instructed Gordon to back up to the tray slot. Bartee Aff. ¶ 4. Gordon complied and they handcuffed him and placed leg restraints on him. *Id.* After that, Bartee and Carnes assisted Gordon to his feet. *Id.* Gordon then turned, sat down on the toilet, and refused to leave his cell because he could not take a laundry bag of legal materials with him. *Id.*

---

[1] Internal citations, alterations, and quotation marks will be omitted throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] I previously dismissed all claims against defendants B. Berg, B. J. Ravizee, Lt. Fleming, Warden Fleming, Henry Ponton, and Curtis Parr. Only the excessive force claims against Bartee and Carnes remain. *See* Order, dkt. 47.

[3] Bartee and Carnes were transportation officers that "were responsible for going to the offender's cell, restraining him, [and] escorting him to the intake area where the offender could change his clothes." Carnes Aff. ¶ 4, dkt. 27-3.

Gordon alleges, under penalty of perjury, that after a brief discussion about the legal materials, Bartee responded, "We don't care," and "grabbed and jerked" Gordon, causing him to fall backwards and hit his head on the toilet and the floor. Compl. 8 & 9. He asserts that the waist-chain and handcuffs prevented him from bracing himself, and after the fall Bartee and Carnes dragged him out of the cell. *Id.* Gordon refused to get up and continued to lay on the catwalk floor until Bartee and Carnes called a lieutenant. The lieutenant assured Gordon that his materials would follow him to the next institution, and Gordon allowed Bartee and Carnes to escort him to the intake area. Gordon states that he suffered a head injury that caused wooziness, dizziness, blurred vision, and a painfully throbbing head, at least in the immediate aftermath of his alleged fall**.** *Id.* at 11. He also states that he has continued to have periodic headaches, dizziness, and blurred vision after the incident, especially during exercise, at least in the days that followed the alleged incident. *Id.* at 68.

Defendants contend that they did not use excessive force against Gordon, they did not drag Gordon, and Gordon did not fall or hit his head on the toilet. They have attached Gordon's medical records, which reflects that (1) a nurse noted that Gordon was in good health with no injury or distress when he arrived at Red Onion on November 10, 2015; (2) the medical department received request forms from Gordon dated November 10, November 15, and December 3, 2015 for headaches and blurred vision; (3) Gordon was scheduled for sick call and the nurse evaluated Gordon and referred him to the doctor on November 16, 2015; (4) on November 16, 2015, the doctor gave Gordon Tylenol and scheduled another appointment for the following week; (5) on November 23, 2015, the doctor examined Gordon for his complaints of headache and noted that Gordon complained of a headache since falling on November 10, 2015; and (6) the doctor ordered

a skull x-ray and the results were normal. Nurse B. Witt Aff. ¶¶ 4-6 & Enclosures A & B, dkt. 27-4. The medical staff did not note any other issues.

The defendants also proffered video evidence of the incident. After restraining Gordon, the officers wait outside his cell for thirty seconds. Exh. 5, D-3 Pod Back Video, at 7:23:33-7:24:00, dkt. 29. At that point one of the officers then enters the cell and brings Gordon out. *Id.* at 7:24:00-7:24:05. The other officer stays just outside the cell and assists the other officer once Gordon was brought to the door threshold. *Id.* Bartee states that Carnes took Gordon's right arm and supported his right shoulder with the other hand while he, Bartee, was standing just outside the cell door and reached into the cell to assist with Gordon's left arm and left shoulder to bring him out of the cell. Bartee Affidavit, ¶ 5, dkt. 27-1. Carnes did not recall Gordon or any incident with him. Carnes Affidavit ¶ 4, dkt. 27-3. Gordon claims that it was Bartee who grabbed and jerked him, causing him to fall and hit his head. Compl. 5.

## II. Claims

Gordon asserts one claim: that Bartee and Carnes violated the Eighth Amendment when they used excessive force in dragging him out of his cell. He seeks a declaration that the defendants violated his rights, damages, and associated court costs.

## III. Standards of Review

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute

over a material fact must be genuine, "that is, the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative." *Id.* at 249-50.

The moving party must initially demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs or speculation to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992).

### B. *Pro Se* Pleadings

Gordon is proceeding *pro se* and, thus, entitled to a liberal construction of the pleading. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007). The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

### C. Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

4

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Negligent deprivations are not actionable under § 1983. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995).

### D. Excessive Force

The Eighth Amendment's prohibition on cruel and unusual punishment forbids the malicious and sadistic infliction of pain on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319-21 (1986). To determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," the Supreme Court has established the following factors: (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the extent of any inflicted injury, (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and (5) any efforts made to temper the severity of a forceful response. *Id.* at 320-21. The core judicial inquiry, however, is not whether a certain quantum of injury was sustained but rather whether force was applied in a good-faith effort to maintain or restore order, or maliciously and sadistically to cause harm. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Id.* "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* The Eighth Amendment does not

5

require significant injury: "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

### E. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In determining whether the law was clearly established at the time of the claimed violation, the court "ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). The onus is on a defendant asserting qualified immunity to actually put forth authorities and argument showing that he is entitled to it. *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

## IV. Discussion

### A. Official Capacity

To the extent Gordon brings this action against defendants in their official capacity for monetary damages, such claims are not cognizable under § 1983. "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State*

*Police*, 491 U.S. 58, 71 (1989). Because the defendants in their official capacity are not "persons" who can be sued under § 1983, I will grant the defendants' motion for summary judgment with respect to Gordon's official capacity claims.

**B. Excessive Force**

In his only remaining claim, Gordon alleges that Bartee and Carnes used excessive force when they allegedly dragged and jerked him out of his cell, causing him to hit his head on the toilet and floor. Defendants assert that no force at all was used in the incident.

*1. Bartee*

Gordon has established a genuine dispute of material fact regarding his allegations that Defendant Bartee used excessive force. All the *Whitley* factors[4] are in dispute. For factors 1, 2, 4, and 5, Gordon, in his Complaint filed under penalty of perjury, states that he was not a threat and Bartee unjustifiably grabbed, jerked, and dragged him. *See* Compl. 5-6. Meanwhile, Bartee asserts that no force was used at all and Gordon did not hit his head on the toilet or floor. Bartee Aff. ¶ 6. The video evidence shows that one of the two officers (Bartee and Carnes) exercised at least some force on Gordon by entering Gordon's cell and bringing him out to the catwalk. Dkt. 27-5, D-3 Pod Back Video, at 7:24:00-7:24:05. Bartee has not provided evidence that that officer was not him. I cannot determine the amount or necessity of the force because the camera angles only show the back and side of the officer entering the cell.[5] *Id.* The video does not show the

---

[4] (1) The need for application of force, (2) the relationship between the need and the amount of force used, (3) the extent of any inflicted injury, (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and (5) any efforts made to temper the severity of a forceful response. *See Whitley*, 475 U.S. at 319.

[5] The distances and angles of the cameras, the body positioning of both officers and Gordon, and the typical issues with REM video footage, leave room for the possibility of the alleged unconstitutional actions. Like most REM footage, the video is choppy.

inside of Gordon's cell, and, for a few brief moments, the officer is in the cell and out of frame. *Id.* For the third factor, Gordon contends that he suffered wooziness, dizziness, blurred vision, and a painfully throbbing head immediately after the incident, and that he has continued to have periodic headaches, dizziness, and blurred vision. The medical record establishes that Gordon sought treatment for the alleged injuries.

Although the Defendants provided video, affidavit, and medical evidence, genuine disputes of material fact remain regarding Bartee because the video footage is not conclusive as to his action and even insignificant injuries, when maliciously inflicted, violate the Eighth Amendment. *See McMillian*, 503 U.S. at 9. In light of the nature of the excessive force claims, Bartee is not entitled to qualified immunity.

### 2. Carnes

Gordon alleges that Carnes used excessive force when Carnes assisted Bartee in dragging Gordon from the floor out of his cell. Compl. 5. In his affidavit, Carnes states that he does not remember Gordon or any incident with him. Carnes Aff. ¶ 4, dkt. 27-3. Bartee states that Carnes took Gordon's right arm and supported his right shoulder with Carnes' other hand while he, Bartee, was standing just outside the cell door and reached into the cell to assist with Gordon's left arm and left shoulder in bringing him out. Bartee Aff., ¶¶ 4, 5, dkt. 27-1.

Gordon's complaint, which he filed under penalty of perjury, states that as he moved to sit on the toilet "Bartee grabbed and jerked me, causing me to fall backwards and my head to slam into the toilet, and then hit the floor." Compl. ¶ 9.[6] Only after this impact does Gordon assert that "Bartee and [Carnes] dragged me on the floor, out of [the] cell." Compl. ¶ 10. And again, Gordon

---

[6] Gordon was allowed to amend his complaint to identify Carnes as the other officer involved. Dkt. 19.

refers to "Bartee grabbing, jerking, and causing me to fall backwards." *Id.* And once again, referring to Bartee, "Grabbing and jerking me, which caused my head to hit the toilet and floor, was totally unnecessary force, and there was no need to drag me on the floor." Compl. ¶ 12. The reference to Carnes with respect to Gordon hitting his head is that Carnes helped Bartee drag Gordon from the cell *after* his head hit the toilet and floor. Compl. ¶¶ 9, 10. Although in his response to defendants' motion for summary judgment Gordon says the question is whether or not he hit his head on a hard surface while being dragged by Bartee and Carnes, dkt. 39 ¶ 6, that statement contradicts Gordon's definitive assertion that he hit his head on the toilet and floor because of Bartee's actions *before* Bartee and Carnes dragged him out of the cell. *See* Compl. ¶¶ 9, 10, 11.

Further, the video footage shows Gordon being brought through the cell door to the catwalk. The video footage shows that Gordon was on his knees with his torso vertically-oriented, not on his back, as he was pulled through the cell door. The video did not show Gordon being jerked or falling at that time. Only after reaching the catwalk did he lie down. Dkt. 27-5, D-3 Pod Back Video, at 7:24:00-7:24:07. Gordon's claim to the contrary, the video footage shows no excessive force as he was pulled through the cell door. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. In particular, where, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.").

Carnes has shown the absence of a genuine dispute as to a material fact with respect to Gordon's excessive force claims against him. Gordon has failed to counter Carnes' showing by

9

setting forth facts to demonstrate a genuine issue of fact for trial. Indeed, Gordon's own statements, made under penalty of perjury, and the video evidence, demonstrate that no reasonable jury could return a verdict for Gordon with respect to his excessive force claim against Carnes. The Court, therefore, will grant summary judgment in favor of Carnes.

## V. Conclusion

Accordingly, the defendants' motion for summary judgment as to the excessive force claim against Bartee will be denied except to the extent Plaintiff seeks monetary damages against Bartee in his official capacity. Summary judgment will be entered in favor of Carnes.

The Clerk is directed to send a copy of this opinion and the accompanying order to the parties.

**ENTER:** This  30th  day of March, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE